### In re TANAKA BROTHERS FARMS, INC., Debtor.

**Bankruptcy No. 91–10165 RJB.**

United States Bankruptcy Court, D. Colorado.

Jan. 14, 1993.

Elizabeth J. Greenberg, Elizabeth J. Greenberg, P.C., Denver, CO, for trustee, Andrea S. Berger.

Cynthia T. Kennedy, Kennedy & Kennedy, P.C., Boulder, CO, for creditor Boulder Creek Farms, Inc.

Phillip Blondin, Trial Atty., U.S. Dept. of Justice, Washington, DC, and Bruce Anderson, Sp. Asst. U.S. Atty., Denver, CO, for the I.R.S.

### MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER came on for hearing on January 4, 1993, upon the Trustee's Objection (the Trustee was joined by Boulder Creek Farms in the objection) to the amendment to Claim No. 43 filed by the Internal Revenue Service ("IRS").

This case was filed on January 7, 1991, as a Chapter 11 case. On May 1, 1991, the case was converted to Chapter 7 and on May 7, 1991, the Trustee was appointed. The Court set September 3, 1991, as the last date to file claims against the estate, i.e. the "bar date."

On March 12, 1991, the IRS had filed a Proof of Claim for taxes which Proof of Claim asserted, *inter alia*, the following claims:

| Kind of Tax | Period | Date Tax Assessed | Due |
| --- | --- | --- | --- |
| WT/FICA | 12/31/90 | Estimated* | $ 10,000.00 |
| FUTA | 12/31/90 | Estimated* | 5,000.00 |
| 943(Agri) | 12/31/90 | Estimated* | 100,000.00 |

On June 11, 1992, the IRS filed what it called "Amendment #1 to Proof of Claim dated 03/12/92 [sic]" which Proof of Claim asserted, *inter alia*, the following claims:

| Kind of Tax | Period | Date Tax Assessed | Due |
| --- | --- | --- | --- |
| WT/FICA | 12/31/90 | 3 To Be Assessed | $ 9,339.64 |
| FUTA | 12/31/90 | 3 To Be Assessed | 62,043.79 |
| AGRI–FICA | 12/31/90 | 3 To Be Assessed | 399,759.85 |

Thus, for the three taxes involved the IRS increased its claim from $115,000.00 to $471,142.48, an increase of $356,142.48. It is this increase that is objected to by the Trustee and Boulder Creek Farms. Boulder Creek Farms is by far the largest secured and unsecured creditor of the estate.

At the time the Trustee was appointed there already was substantial ongoing litigation between the Debtor and Boulder Creek Farms in which the Trustee was substituted for the Debtor. There were deadlines already established in that litigation and it required the immediate and almost full time efforts of the Trustee and her counsel. The Debtor's financial records were contained on a computer but the Trustee could not access the information because there was no one available that knew the software. The financial documents of the Debtor were in disarray and voluminous. In fact, the Trustee did not even have all of the financial documents. The 4th quarter 1990 documents were in the possession of a Mr. Collins. Collins was the former manager of the Debtor who now worked for Boulder Creek Farms and was an adversary of the Trustee in the litigation with Boulder Creek Farms, and he would not turn over these documents.

After extensive discovery between the Trustee and Boulder Creek Farms, and numerous hearings and negotiations, most of the issues were settled by the parties in approximately March 1992. Only one issue was tried to the court in April 1992. Needless to say this litigation was expensive to both sides.

Both the Trustee and the representative of Boulder Creek Farms testified that their respective negotiation positions were greatly influenced by the nature and amount of the claims that had been filed against the estate as of the bar date of September 3, 1991. The Trustee testified that had she known of the extent of the IRS claim as shown on the amended Proof of Claim she may not have even pursued the litigation because there would not have been any significant assets in the estate after such IRS claim to justify the continued costs of litigating against Boulder Creek Farms. Boulder Creek Farms' representative testified that had he known of the large IRS claim he would not have settled as he did by giving up $500,000 of his $1.5 million unsecured claim. He further testified that at the time of his settlement he estimated that based upon the timely filed Proofs of Claim, Boulder Creek Farms would still only realize about ten cents on the dollar of its unsecured claim. This estimate was echoed by the Trustee and the testimony was to the effect that if the IRS amendment is allowed there will be little, if anything, left for the unsecured creditors.

The IRS claims that its amended claim is based upon actual returns filed by the Trustee on May 8, 1992. Because of the litigation with Boulder Creek Farms the Trustee did not have an accountant appointed for the estate until late 1991 or early 1992. There was no real need to hire an accountant before that because the Trustee didn't have the documents needed for the accountant to prepare the tax returns.

IRS agent testified that the IRS prepares its "estimates," such as those appearing on the original IRS Proof of Claim, from the "most accurate information available", i.e. "from the last filed returns." No attempt was made to audit the Debtor and no investigation of any kind was made by the IRS even though the IRS agent in Ft. Collins, Mr. Richard Simons, was aware that the Debtor had been seriously behind in its taxes for previous years. However, after March 20, 1990 (see Exhibit 12) he "turned them loose", i.e. he ceased monitoring the Debtor's tax compliance. In fact, the evidence was completely void of any contact at all by the IRS with the Debtor or the Trustee such as a telephone call to inquire as to when the returns would be filed. Mr. Simons also testified that perhaps as early as August 1991, he knew that the Debtor had close to a $2.0 million payroll for 1990. Upon receipt of a Form 6560 (Exhibit 16) from the Debtor he called the Special Procedures section of the IRS in Denver and told them the IRS needed to amend its Proof of Claim. He was told there was no need to do so because the original Proof of Claim was just an "estimate" anyway.

Ms. Shirley Tanaka's testimony indicated that the Form 6560 may have been sent to Mr. Simons much earlier. She testified that before the case was converted to Chapter 7 (May 7, 1991) she was asked to try to get the W–2 information out of the computer. She tried but had difficulty in doing so because the IRS had changed forms and she had to wait for a software update so that she could properly prepare and file the W–2 information on magnetic media. She testified that she called an IRS agent in Ft. Collins and told him of the software problem and that the W–2 information would be late and the Debtor would need an extension.

Finally, Boulder Creek Farms presented expert testimony from Mr. Stuart Kingsbery that the returns filed by the Trustee may not even be correct because of a settlement the Trustee had entered into with another creditor regarding priority wage claims. Whether or not Mr. Kingsbery is correct, his testimony does cast considerable doubt upon the correctness of the returns filed by the Trustee upon which the IRS now relies to prove its claim.

11 U.S.C. § 502(a) provides that "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." There has been an objection filed to the IRS amended Proof of Claim. Therefore, the IRS does not have the presumption of validity provided for in § 502(a) and must prove up its claim. The evidence provided by Mr. Kingsbery casts serious doubt on the correctness of that amended Proof of Claim and, therefore, this Court finds that the IRS has failed in its burden of proof on that amended Proof of Claim. There has been no objection to the IRS's original Proof of Claim and, therefore, that claim is deemed allowed under § 502(a).

Finally, this Court believes that the case of *In the Matter of Stavriotis*, 977 F.2d 1202 (7th Cir.1992), applies in this case. The interests of justice require that the IRS's amended Proof of Claim should not be allowed. The over four fold increase in the claim came as an unfair surprise to the creditors and the Trustee. The evidence showed that the usual *modus operandi* of the IRS is to overestimate when it files a Proof of Claim and that even when such estimates are understated, the final claim is generally very close to the estimate. Thus, the parties, who had no notice that the IRS claim would be so large, relied on the general amount of the original claim in conducting a very expensive and time consuming piece of litigation and the ultimate settlement thereof. In addition, the IRS offered no excuse or justification for its delay in amending its claim. The IRS had information much earlier (before the parties had committed substantial resources and time to the litigation and before the settlement of that litigation) that would have suggested that it needed to do something to amend its proof of claim. But it did nothing, either by way of requesting an extension of the bar date, making inquiries of the Debtor or the Trustee, or conducting an audit, preferring instead to wait until the Trustee got around to

hiring an accountant and submitting tax returns. It might also be noted that these tax returns were due at the end of January 1991, while the Debtor was still in possession of the estate, and were not filed by the Trustee until May 1992, some 15 months late. It is, therefore,

ORDERED that the amended Proof of Claim filed by the IRS on June 11, 1992, is disallowed and the Proof of Claim filed by the IRS on March 12, 1991, is allowed.