36 F.3d 996
 74 A.F.T.R.2d 94-6634, 63 USLW 2291,
26 Bankr.Ct.Dec. 132,
Bankr. L. Rep. P 76,120
 In re TANAKA BROTHERS FARMS, INC., Debtor,
UNITED STATES of America, and its agency the Internal
Revenue Service, Appellant,
v.
Andrea S. BERGER, Trustee; Boulder Creek Farms, Inc., Appellees.
 No. 93-1211.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 3, 1994.
 
 Christine A. Grant, Atty., U.S. Dept. of Justice, Tax Div., Washington, DC, (Loretta C. Argrett, Asst. Atty. Gen., Washington, DC, Gary D. Gray, Atty., U.S. Dept. of Justice, Tax Div., Washington, DC, Henry Lawrence Solano, U.S. Atty., Denver, CO, with her on the briefs), for appellant.
 Paul G. Quinn, Denver, CO, for appellee Andrea S. Berger.
 Cynthia T. Kennedy, Boulder, CO, for appellee Boulder Creek Farms, Inc.
 Before EBEL, HOLLOWAY, and KELLY, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 This case is before us on appeal from a decision by the United States District Court for the District of Colorado, affirming a decision by the United States Bankruptcy Court for the District of Colorado. The bankruptcy court disallowed an amended proof of claim by the Internal Revenue Service ("IRS") in this bankruptcy proceeding, 150 B.R. 55. The district court affirmed the bankruptcy court's ruling, and the government appealed, arguing that the bankruptcy court abused its discretion in refusing to allow the IRS to amend its earlier estimated proof of claim based upon its subsequent receipt of the debtor's delinquent tax returns. We agree with the government that the IRS should have been allowed to amend its proof of claim to reflect the information in the subsequently filed returns and that the bankruptcy court abused its discretion in refusing such amendment. Accordingly, we reverse the decision of the district court and remand with instructions to send the case back to the bankruptcy court for further proceedings in accordance with this opinion.
 
 I. BACKGROUND
 
 2
 The debtor in this matter, Tanaka Brothers Farms, Inc. ("debtor"), originally filed a petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court of Colorado on January 7, 1991. On March 12, the IRS filed a timely proof of claim for debtor's unpaid 1990 employment and unemployment taxes. This initial proof of claim by the IRS specified the exact amounts of withheld taxes and FICA due for the first three calendar quarters of 1990: periods for which the debtor had filed timely quarterly employment tax returns (Forms 941) for its nonagricultural employees. However, the IRS could only list estimates for fourth quarter withheld taxes and FICA, annual FUTA (based on Form 940), and annual agricultural employment tax (based on Form 943), as the debtor had failed to make a timely filing of these forms for the year 1990. The IRS estimates were based on debtor's previous returns and were clearly designated as "Estimated" on the IRS proof of claim. During May 1991, debtor's Chapter 11 proceeding was converted to a Chapter 7 liquidation, a trustee was appointed, and a bar date of September 3, 1991 was set.
 
 
 3
 At some time in the second half of 1991, an IRS agent received information that debtor's payroll for 1990 would be substantially higher than the amount used to arrive at the earlier estimated proof of claim. However, the IRS decided not to revise its claim at that time, as a revision would simply constitute another estimate until debtor's tax returns were actually filed. While the IRS did not formally amend its proof of claim at that time, the IRS agent did notify counsel for the trustee of the new payroll information possessed by the IRS.
 
 
 4
 After the bar date had passed, the trustee began negotiations to settle claims against the estate. The most substantial were claims by Boulder Creek Farms, Inc. ("Boulder Creek") and Mobile Payroll Services ("Mobile"). The settlement agreement with Boulder Creek entitled it to retain the proceeds of liquidation of debtor's onion crop and allowed it a general unsecured claim against the estate of $1,225,000. The bankruptcy court approved this agreement on April 1, 1992. Mobile's claim against the estate was based on having cashed payroll checks for debtor's employees that were subsequently dishonored by debtor's bank due to insufficient funds. Mobile agreed to surrender its total claims of $364,224.20 in exchange for an allowed claim of $125,000 with a priority under 11 U.S.C. Sec. 507(a)(3). On June 13, 1992, the bankruptcy court approved the Mobile settlement.
 
 
 5
 On May 8, 1992, the trustee filed debtor's delinquent employment tax returns for 1990, reflecting taxes due of $471,142.48 (instead of the previously "estimated" $115,000.00). The IRS then filed an amended proof of claim, on June 11, 1992, which included the higher corrected figure. The trustee objected to the amended proof of claim on the basis that the increased amount was so substantial as to constitute a new and untimely claim rather than a mere amendment. The trustee requested the bankruptcy court to disallow the amended claim and, instead, to allow the original estimated claim as filed. Boulder Creek, as a major creditor, intervened, alleging it had relied on the original estimate in its settlement with the trustee and requesting that the amended IRS claim be disallowed. The bankruptcy court conducted a hearing and disallowed the IRS's amended claim as constituting "unfair surprise" to other creditors and the trustee. The government appealed and the district court affirmed. Before us is the government's timely appeal from the district court's order.
 
 
 6
 II. ALLOWANCE OF THE IRS'S AMENDED PROOF OF CLAIM
 
 
 7
 In reviewing a district court's decision affirming the decision of a bankruptcy court, the court of appeals is governed by the same standards of review as those that governed the district court. Robinson v. Tenantry (In re Robinson), 987 F.2d 665, 667 (10th Cir.1993). The decision of the bankruptcy judge to disallow the amended proof of claim is reviewable under an abuse of discretion standard. Unioil v. Elledge (In re Unioil, Inc.), 962 F.2d 988, 992 (10th Cir.1992). Under this standard, we will not disturb a bankruptcy court's decision unless we have a definite and firm conviction that the bankruptcy court made a clear error of judgment or exceeded the bounds of permissible choice under the circumstances. Cf. United States v. Talamante, 981 F.2d 1153, 1155 (10th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1876, 123 L.Ed.2d 494 (1993) (applying an abuse of discretion standard to evidentiary rulings).
 
 
 8
 In a bankruptcy proceeding, "amendment of a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable." In re Unioil, Inc., 962 F.2d at 992. A creditor's "[l]ate-filed amendments to proofs of claim should be treated with liberality, as '[l]eave to amend in a straight bankruptcy proceeding is freely allowed where the purpose is to cure a defect in the claim as originally filed,' " id. at 992-93 (quoting LeaseAmerica Corp. v. Eckel, 710 F.2d 1470, 1473 (10th Cir.1983) (citation to original quotation omitted)), and where the party opposing the amended proof of claim fails to demonstrate actual prejudice. Id. at 993.
 
 
 9
 When the IRS filed its original estimated proof of claim in the instant case, it provided timely and adequate notice of the existence and nature of its claim for unpaid 1990 employment taxes. However, the issue we must decide in this case is whether the IRS's original proof of claim provided adequate notice as to the amount of the claim, or whether the increase in the amount of the amended proof of claim constitutes unfair surprise and prejudice to the estate or its creditors.
 
 
 10
 Various equitable factors that could help guide a decision whether to allow a claim to be amended were set forth in In re Oasis Petroleum Corp., 130 B.R. 89, 91-92 (Bankr.C.D.Cal.1991) (applying equitable factors from In re Miss Glamour Coat Co., No. 79 Civ. 2605, 1980 WL 1668, * 4-5 (S.D.N.Y. Oct. 8, 1980)). Those equitable factors, which specifically address amended claims by the IRS, are as follows:
 
 
 11
 (1) Whether the parties or creditors relied on the IRS initial claim, or whether they had reason to know subsequent proofs of claim would follow pending the completion of the audit.
 
 
 12
 (2) Whether other creditors would receive a windfall to which they are not entitled on the merits by the Court not allowing this amendment to the IRS proof of claim.
 
 
 13
 (3) Whether the IRS intentionally or negligently delayed in filing its amended claim.
 
 
 14
 (4) The justification, if any, for the failure to request the timely extension of the bar date.(5) Any other general equitable considerations.
 
 
 15
 Id. at 92.
 
 
 16
 Here, the IRS's original claim was clearly denoted as an "estimate." In this case, without the benefit of fourth quarter or annual returns for 1990, the IRS based its estimate on the information it had at the time: debtor's previous tax returns. The IRS's designation of its original claim as an estimate, combined with the knowledge on the part of the trustee and Boulder Creek that the complete returns had not yet been filed,[1] should have served as clear notice that an amendment from the IRS would be forthcoming upon receipt of debtor's returns. When the IRS did receive the debtor's delinquent returns, it acted promptly to amend its proof of claim to reflect the information contained therein.
 
 
 17
 Appellees assert that the IRS received new information subsequent to filing its original proof of claim that indicated its original estimate was too low and that the IRS should have acted at that time to amend its estimated proof of claim instead of waiting for the completed returns. However, the trustee also possessed this same new information and could have made the same calculations to assess the likely effect on the original estimated proof of claim.[2] There is no indication in the record of any point in time at which the IRS was in a better position to estimate the debtor's tax liability than the trustee.
 
 
 18
 Boulder Creek, however, argues that it had no notice that the original IRS estimate might be low, that it relied on this estimate in settling its claim against the estate, and that it was subsequently unfairly surprised and prejudiced by the amount of the amended IRS claim. The difficulties with this argument are threefold. First, Boulder Creek was conducting settlement negotiations with the trustee, not with the IRS. Of the two parties who were in the best position to know of the magnitude of the tax claim, the IRS and the trustee, only the trustee was familiar with the negotiations with Boulder Creek and the potential effect of the IRS claim on those negotiations. Thus, if anyone owed Boulder Creek a duty to disclose information relating to debtor's eventual tax liability, it was the trustee, representing the debtor. Any action based on an alleged breach of that duty would properly be against the trustee and that claim is not before us today.
 
 
 19
 Second, while Boulder Creek may not have had sufficient information to know that the original proof of claim was low, it did know (or should have known) that the original claim was only an estimate. It was clearly so denominated by the IRS when it was filed. If the amount of the IRS's claim was of substantial importance to Boulder Creek in its settlement with the trustee, then it was incumbent upon Boulder Creek to contact the IRS for further information before blindly relying on an "estimate" of that claim. Reliance on such an estimate in the absence of further investigation was unreasonable under the circumstances and does not provide a basis for "unfair" surprise or prejudice.
 
 
 20
 Third, both the trustee and Boulder Creek could have protected themselves from any surprise related to the fact of amendment by simply making any settlement conditional upon the result of the final IRS claim which they knew would be made after the completion of the tax returns. This, of course, could not protect against an IRS priority claim or to put them in any better position than they would have been in had the original claim sought the larger amount; however, it would protect against any surprise because the original claim was later amended. However, neither the trustee nor Boulder Creek chose to protect themselves through such a conditional settlement. This court should not endeavor to protect Boulder Creek and the trustee from a surprise they reasonably could have protected against, but did not.
 
 
 21
 Appellees argue strongly that the IRS could have, and should have, filed an amended "estimated" claim as soon as it received new information about the larger payroll figures. An amended estimate would still be an estimate. It might or might not be any more accurate than the original estimate, and it might lead creditors to rely more heavily on its accuracy than they should with an estimate. When the trustee did file the debtor's actual returns, the IRS promptly calculated its new claim and provided it to the estate through the amended proof of claim.
 
 
 22
 In disallowing the IRS's amended proof of claim, the bankruptcy court relied on In re Stavriotis, 977 F.2d 1202 (7th Cir.1992). In Stavriotis, the IRS was denied leave to amend its original proof of claim in a Chapter 11 case in order to increase the debtor's tax liability for the given period from $11,132.93 to $2,435,078.39. However, we believe that the case at hand differs significantly from Stavriotis and is, therefore, distinguishable in two important ways. First, the original timely claim in Stavriotis was not designated as an estimate by the IRS. See id. at 1203. The taxpayer had filed returns for the period in question, and the IRS proof of claim was based on those returns. Id. The later amended proof of claim was based on an IRS audit, id., an event wholly within the control of the IRS, and an event much more likely to surprise a creditor who had relied on the amount of a previously filed IRS proof of claim based on completed tax returns.[3] In the case before us, in contrast, the IRS filed its original claim as an estimate, effectively giving the trustee and creditors notice that the amount was subject to change. The IRS then waited for the taxpayer's delinquent returns and promptly filed an amended claim after receiving those returns.
 
 
 23
 Second, the difference in amount between the original timely claim and the later amended claim was substantially less in the case at hand, both as a percentage and as an absolute amount. In Stavriotis, the amount of the amended IRS claim was more than 220 times the amount of the original claim and exceeded the original claim by over $2 million. Id. at 1203. Here, the amended IRS claim was 4 times the original and exceeded it by just over $300,000. This is not to say that the difference in amounts, by itself, will always be dispositive; however, when combined with the first difference between the two cases, this difference in amount is more than sufficient to render Stavriotis inapplicable to the facts before us.
 
 
 24
 In summary, we believe that the IRS provided sufficient and timely notice of its claim through its original estimated claim, showed good faith in providing subsequently acquired information to the trustee, and showed diligence in promptly filing its amended proof of claim after receiving the debtor's tax returns. When we view the settlement negotiations of the trustee and Boulder Creek against the backdrop of what they each did know or should have known about the IRS's claim, we are left with a definite and firm conviction that the bankruptcy court clearly erred when it disallowed the IRS's amended proof of claim. Considering the liberal standards this court has applied in allowing amendment to a proof of claim, we do not believe that disallowing the IRS's amended claim was within the bounds of permissible choice by the bankruptcy court. We hold, therefore, that the bankruptcy court abused its discretion when it disallowed the amended proof of claim by the IRS.[4]III. EMPLOYMENT TAX LIABILITY ON DISHONORED PAYCHECKS
 
 
 25
 The parties have also briefed and argued the issue of when employment taxes are incurred on employee paychecks which are cashed by a third party, but subsequently dishonored by the employer's bank. In this case, Mobile cashed checks for debtor's employees, which checks were subsequently dishonored by debtor's bank. Mobile filed a claim for the amount of the dishonored checks, but ultimately agreed to an allowed claim against debtor's estate for $125,000, which was significantly less than the total of the checks it had cashed.
 
 
 26
 The Appellees apparently are arguing that the IRS has a valid claim for employment taxes only on that portion of the dishonored payroll checks that the trustee ultimately agreed to allow as an approved claim by Mobile. Appellees appear to assert that it would not be necessary to allow the IRS to enlarge its claim if its right to employment taxes is so limited. Appellees' Br. at 7. They argue that the IRS's original proof of claim would "more than cover the legitimate taxes owed on the $125,000 distribution to Mobile Payroll." Id. However, the record does not support this assertion. Even according to Appellees' own calculations, if we disregard that portion of Mobile's claim that the estate did not agree to allow, that would only reduce the wages upon which the IRS bases its tax calculations by $238,000; whereas, the disallowance of the IRS's amended proof of claim would reduce the IRS's claim for taxes on wages by over $300,000. While a decision as to the appropriate portion of the dishonored checks upon which taxes should be calculated will certainly affect the IRS's eventual allowed claim, it in no way affects the IRS's right to amend its claim to reflect the higher claimed amount, whatever that amount may eventually be determined to be.
 
 
 27
 The bankruptcy court did not resolve this issue, although it does discuss it briefly in its opinion and order where it implied that doubt about the validity of the IRS's amended claim was a further basis for disallowing the amendment. Appellant's App. Vol. I at 26-27. The district court similarly noted the issue and observed that the bankruptcy court did not issue a definite ruling on the validity of the amended claim. Because the validity of the amended claim should first be ruled upon by the bankruptcy court and reviewed by the district court before we pass upon it, we decline to rule on this issue at this time.[5]
 
 IV. CONCLUSION
 
 28
 We hold that the IRS should be allowed to amend its proof of claim so as to reflect the information in debtor's 1990 employment and unemployment tax returns. The bankruptcy court abused its discretion in disallowing the amended IRS proof of claim. Accordingly, we REVERSE the decision of the district court and REMAND with instructions to send the case back to the bankruptcy court for further proceedings on the merits of the amended IRS proof of claim in accordance with this opinion.
 
 
 
 [1]
 The trustee clearly knew this, as she was the one who later filed the returns. It is reasonable to assume that Boulder Creek also knew this because it was holding the records necessary to complete the fourth quarter and annual returns
 
 
 [2]
 In fact, the trustee's records would have provided more information as to the effect of an increase in minimum wage on the total tax liability, as they would provide more information as to the actual number of employees earning less than the new minimum wage amount, as well as the number of hours those employees worked
 
 
 [3]
 In fact, the court in Stavriotis specifically relied on the prejudice to creditors caused by the IRS's failure to notify them of its ongoing audit. 977 F.2d at 1205-06
 
 
 [4]
 The IRS, in its reply brief, invited this court to consider the argument that any IRS priority claim under 11 U.S.C. Sec. 507 must be allowed regardless of timeliness. Under this line of argument, the bankruptcy court would have no discretion to disallow a post-bar date amendment of a priority claim. During the pendency of this appeal, the Second Circuit adopted this line of reasoning in United States v. Vecchio (In re Vecchio), 20 F.3d 555 (2nd Cir.1994). However, we decline to consider this argument because it was not raised or argued below. As the Supreme Court stated in Singleton v. Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), "[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." Id. at 120, 96 S.Ct. at 2877; Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 720 (10th Cir.1993)
 
 
 [5]
 So that there be no doubt about the parties' ability fully to address this issue on remand, we vacate any suggestion in the orders below that imply that the IRS claim should be disallowed at this stage of the pleadings based upon the testimony of Mr. Kingsbery or otherwise based on the state of the record at this time