In the Matter of BEST REFRIGER-
ATED EXPRESS, INC., Debtor.

Bankruptcy No. BK89–80169.

United States Bankruptcy Court,
D. Nebraska.

Jan. 31, 1996.

Robert Yates, Omaha, NE, for trustee.

Denise Dengler, Des Moines, IA, for Iowa Dept. of Rev.

James Woodruff, Omaha, NE, for Nebraska Dept. of Rev.

John Leed, pro se.

Paul Potadle, Lincoln, NE, for Neb. Motor Vehicles.

### *MEMORANDUM*

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on Trustee's Motion to Disallow Tax Claims; Objection by Department of Motor Vehicles, State of Nebraska; Objection by John Leed; Resistance by State of Nebraska, Department of Revenue; Opposition by Iowa Department of Revenue and Finance. Appearances: Robert Yates, Attorney for trustee; Denise Dengler, Attorney for Iowa Department of Revenue; James Woodruff, Attorney for Nebraska Department of Revenue; John Leed, pro se; Paul Potadle, Attorney for Nebraska Motor Vehicles. This memorandum contains findings of fact and conclusions of law required by Fed. Bankr.R. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B).

### Background

The debtor, Best Refrigerated Express, Inc., an interstate trucking company, filed a voluntary petition to reorganize under Chapter 11 of the Bankruptcy Code on February 7, 1989. In December of 1989, the debtor began to wind-down its operations, and

ceased operations in February of 1990. A Chapter 11 trustee (trustee) was appointed in February, 1990, to liquidate the debtor. A Chapter 11 liquidating plan was confirmed on June 1, 1995. The confirmed plan will pay in full allowed administrative expenses, including allowed administrative expense claims for taxes, while general unsecured creditors will only receive a small dividend.

On July 5, 1995, the trustee moved to disallow certain administrative expense claims filed by the Nebraska Department of Revenue (Nebraska) and the Iowa Department of Finance and Revenue (Iowa) [hereinafter, Nebraska and Iowa shall be referred to collectively as the "tax authorities"]. The trustee is challenging Nebraska's claims numbered 147 and 156, which relate to withholding taxes and fuel taxes, and Iowa's claims numbered 154 and 155, which relate to sales taxes and fuel taxes. All four disputed claims arose post petition.

The parties do not dispute the amount of principal due on the original post-petition priority tax claims, with one exception. Nebraska filed an amended proof of claim to original claim number 156 for post-petition fuel taxes. Nebraska filed a motion to amend the proof of claim on October 30, 1995, which was after June 1, 1995, the bar date for filing a proof of claim for administrative priority expense claims.

A breakdown of each of the proof of claims at issue in this dispute is as follows:

| Claim No. | Principal | Penalty | Interest * | Date Filed |
|---|---|---|---|---|
| 147 (NE) | 1468.16 | 293.63 | 59.13 | 08/14/90 |
| 154 (IA) | 2211.61 | 331.74 | 139.30 | 09/4/90 |
| 155 (IA) | 4000.00 | 300.00 | 189.00 | 09/4/90 |
| 156 (NE) | 2688.00 | 268.80 | 123.65 | 10/1/90 |
| Amended 156 | 5,368.79 | 536.88 | 3,905.23 | 10/13/95 |

* Monthly interest charges have continued to accrue on these claims since the filing date of these claims at the rates designated in the proof of claims. The interest liabilities in the four proof of claims filed in 1990 have, therefore, significantly increased.

---

### Issues

(1) Should amended claim number 156 be disallowed because the amendment was filed five years after the original claim was filed and after the claims bar date for filing administrative claims expired?

(2) Should the court equitably subordinate the accrued post-petition penalty amounts to the benefit of general unsecured creditors pursuant to 11 U.S.C. § 510(c)(1)?

(3) Are the interest portions of the post-petition tax claims entitled to priority status under 11 U.S.C. § 503(b)(1)(B) or should such amounts be treated as general unsecured claims?

### Decision

(1) Nebraska's amended proof of claim number 156 is allowed.

(2) The penalties accrued on the post-petition tax liabilities of the tax authorities shall be subordinated under 11 U.S.C. § 510(c)(1) to the general unsecured claims.

(3) The interest accrued on post-petition tax liabilities of the tax authorities is allowed as an administrative expense priority claim under 11 U.S.C. § 503(b)(1).

### Discussion

#### A. *Allowance of Amended Proof of Claim of Nebraska*

##### 1. *Legal Authority*

The trustee has challenged the proposed amendment to claim number 156 as untimely and because the claim is being amended nearly five years after the original claim was filed. Generally, the rule in the Eighth Circuit is that creditors may file amendments to proofs of claims after the expiration of the claims bar date. *In re Donovan Wire & Iron Co.*, 822 F.2d 38 (8th Cir.1987); *In re K & L, Inc.*, Neb.Bkr. 92:174, 175 (Bankr.D.Neb.1992) ("[An amendment to a proof of claim] will relate back and

be effective as of the date of the original proof of claim."); *In re Carr,* 134 B.R. 370 (Bankr.D.Neb.1991) ("The amended proof of claim constitutes *prima facie* evidence of the claim under Bankruptcy Rule 3001(f)."). In *Donovan,* the Eighth Circuit opined that the rule concerning amending a proof of claim is a liberal one: "[T]he courts should be liberal in awarding amendments ... at any stage in the proceedings as justice may require." 822 F.2d at 39 (quoting *In re Faulkner,* 161 F. 900, 903 (8th Cir.1908) (quotation omitted)); *accord United States v. Berger (In re Tanaka Bros. Farms, Inc.),* 36 F.3d 996, 998 (10th Cir.1994); *Holstein v. Brill,* 987 F.2d 1268, 1270 (7th Cir.1993); *Roberts Farms Inc. v. Bultman (In re Roberts Farms Inc.),* 980 F.2d 1248, 1251 (9th Cir.1992); *United States v. Kolstad,* 928 F.2d 171, 175 (5th Cir.), *reh'g denied,* 936 F.2d 571, *cert. denied, Kolstad v. Internal Revenue Serv.,* 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991); *In re Stavriotis,* 977 F.2d 1202, 1204 (7th Cir.1992).

In Chapter 11 cases, the Supreme Court has already determined that "excusable neglect" under Bankruptcy Rule 9006(b) governs motions to enlarge time periods after the expiration of a bar date in a Chapter 11 case. *See Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); FED. R.BANKR.P. 9006(b). Bankruptcy Rule 9006(b)(1) states that the bankruptcy court, for cause shown, may enlarge a period of time when a motion is made after the expiration of a bar date if the failure to act was due to "excusable neglect." In *Pioneer,* the Supreme Court held that neglect can pertain to situations of inadvertence, mistake and carelessness, as well as circumstances beyond the control of the creditor, and held that the factors to consider to determine whether the neglect is excusable are the following:

1. The danger of prejudice to the debtor;

2. The length of the delay and its potential impact on judicial proceedings;

3. The reason for the delay, including whether it was within the reasonable control of the movant;

4. Whether the movant acted in good faith.

*Pioneer,* 507 U.S. at 394–95, 113 S.Ct. at 1498.

■ Bankruptcy Rule 9006(b) may not, however, necessarily apply to an amendment to a proof of claim. Many courts follow Bankruptcy Rule 7015 when a motion to amend a proof of claim is made. *See Stavriotis,* 977 F.2d at 1206 n. 4; *Roberts Farms,* 980 F.2d at 1251; FED.R.BANKR.P. 7015. Bankruptcy Rule 7015 incorporates Federal Rule 15(a), which states that an amended claim relates back to the date of the original pleading if the substance of the amendment concerns the same transaction, conduct or occurrence in the original pleading. FED. R.CIV.P. 15(a). Bankruptcy Rule 7015, which applies to adversary proceedings, may be applied to contested matters at the bankruptcy court's discretion through Bankruptcy Rule 9014. FED.R.BANKR.P. 9014 ("The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply.").

■ In this case, Bankruptcy Rule 7015 shall be applied to this contested matter, the objection to filing an amended claim. In addition to determining if the proposed amendment to claim number 156 addresses the original claim, the *Pioneer* factors shall be considered to determine whether the circumstances of this case merit permitting an amendment to a proof of claim. The test for excusable neglect set forth under *Pioneer* embodies both the liberal approach that circuit courts have encouraged bankruptcy courts to follow and the most universal factors that have been considered by other courts when evaluating whether to permit an amendment to a proof of claim. Even though *Pioneer* deals with Rule 9006, the *Pioneer* test is appropriate because the hurdles to overcome in obtaining allowance of an amendment to a timely proof of claim after a claims bar date should not be higher than the hurdles determined by the Supreme Court for obtaining allowance of an untimely original proof of claim.

### 2. *Discussion and Decision*

The trustee takes the position that because Nebraska did not specifically indicate that its original proof of claim was "estimated," Ne-

braska should be denied an opportunity to amend the proof of claim because interested parties did not have notice that original claim number 156 was subject to change. *See also Tanaka Bros.*, 36 F.3d at 1000 (noting that designating an original claim as an estimate puts other interested parties on notice that a proof of claim is subject to change). Since the trustee failed to file the tax returns relating to the liability underlying claim number 156, the trustee had to be aware that Nebraska did not have the actual data to compute an exact tax liability and did, therefore, know that Nebraska estimated its claim.

However, the issue of notice of estimation of the claim is not relevant in this case. Nebraska is amending the claim because of an error in the original computation of the amount of the fuel tax. The fuel taxes were due quarterly under the multi-state "International Fuel Tax Agreement" (IFTA). That compact did not become effective in Nebraska until the first quarter of 1990, and the debtor ceased operating in February, 1990. The fuel tax is based on mileage, and the trustee, who was in place when the taxes became due in April of 1990, did not file the appropriate tax returns on behalf of the debtor to provide the mileage information to Nebraska. Therefore, Nebraska used the debtor's mileage information from the last quarter of 1989, which was based on Nebraska's single-state fuel tax in effect until December of 1989 and which inadvertently omitted consideration of the other member states of IFTA.

 Since the amendment seeks to recompute the tax liability by considering the other member states of IFTA, which were mistakenly omitted from the original proof of claim's computation, the issue of noticing interested parties by marking the original proof of claim as an "estimation" is pointless. The amendment is only seeking to correct a mistake in the computation of the original estimated claim. The enlargement of the tax liability comes from the correction in the computation, not an alteration of the substance of the liability. As recognized in *Pioneer*, mistakes are not fatal to filing an untimely proof of claim, and they should not be fatal in the amendment context. It is unrea-

sonable to require creditors to anticipate mistakes in computations. There are circumstances where denoting the original proof of claim as "estimated" may be important to consider as an equitable factor, e.g. where the creditor should know that a substantial alteration or adjustment in the substance of the tax liability may be necessary or where interested parties may have reasonably relied on the original proof of claim and taken a course of action based on this reliance, but these circumstances are not present in this case.

In the trustee's original motion for disallowance of tax claims, the trustee sought to disallow over $2.4 million of tax claims, and he has succeeded in having the vast majority of these claims disallowed. The increase in tax liability in the amended proof of claim of Nebraska, while almost double the original proof of claim, is insignificant when compared to the total amount of tax claims filed. The amount of the increase in the proof of claim will not injure the estate or its creditors.

The trustee criticizes Nebraska for filing the amended proof of claim five years after the petition was filed, and after the most recent bar date order, but this criticism is not unwarranted. As discussed above, Nebraska had to perform the computations on the original proof of claim because the trustee did not provide the necessary information or file a tax return. The computation error was discovered when the trustee filed the motion to disallow claims, and it is not surprising that a creditor would not identify a computation mistake in a proof of claim until the claim was challenged. The trustee did not challenge the claim number 156 until five years after it was filed.

The claims bar date established on the date the plan was confirmed does not preclude Nebraska from amending its proof of claim, but instead bars creditors from filing new proofs of claims. Nebraska moved to amend shortly after the claim was challenged and within a few months of plan confirmation. There does not appear to be any prejudice to the liquidation of the bankruptcy estate by permitting Nebraska to correct its proof of claim. If the amendment is allowed,

general unsecured creditors may receive a smaller dividend, but such a result would have occurred even if the amendment was filed prior to the bar date.

█ The circumstances of this case justify allowing amended proof of claim number 156. When a creditor moves to amend a proof of claim and that amendment seeks to correct a miscalculation in the original proof of claim, such an amendment should be allowed pursuant to Federal Rule 15(a), especially when there is no real prejudice to the estate or bad faith by creditor.

## B. *Equitable Subordination of Post–Petition Penalty Claims*

### 1. *Standard of Review*

█ The trustee is seeking to have the penalty portion of the tax authorities' administrative claims equitably subordinated to general unsecured claimants. An action to subordinate any allowed claim should be dealt with in an adversary proceeding. FED. R.BANKR.P. 7001(8). However, under Bankruptcy Rule 3007: "If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." FED.R.BANKR.P. 3007. Since the trustee has raised the equitable subordination issue in an objection to claim, the motion to subordinate will be treated as a motion for summary judgment, as if it had been filed in an adversary proceeding.

█ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.BANKR.R. 7056(c); FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden is on the moving party to establish both that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *United States Gypsum Co. v. Greif Bros. Cooperage Corp.*, 389 F.2d 252 (8th Cir.1968). The materials submitted on a motion for summary judgment are viewed in a light most favorable to the non-moving party, and the non-moving party is given the benefit of all inferences reasonably deducible from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### 2. *Discussion of Legal Authority*

█ Penalty claims are generally administrative priority claims under Section 503(b)(1)(C) of the Bankruptcy Code, which provides:

> After notice and a hearing, there shall be allowed administrative expenses ..., including—(C) any fine, penalty, or reduction in credit relating to a tax [incurred by the estate].

11 U.S.C. § 503(b)(1)(C). The parties do not dispute that the penalties imposed by the tax authorities are Section 503(b)(1)(C) administrative claims. Under 11 U.S.C. § 507(a)(1), Section 503(b) administrative claims are paid first, before other claims against the bankruptcy estate.

The trustee argues, however, that the bankruptcy court has authority under the Bankruptcy Code to equitably subordinate the tax penalty claims to the general unsecured claims pursuant to Section 510(c)(1), which states:

> Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.

11 U.S.C. § 510(c)(1).

The circuit courts have overwhelmingly concluded that Congress intended for courts to have the authority to equitably subordinate non-pecuniary tax penalty claims to general unsecured claims, even in the absence of any evidence of wrongdoing by the tax authority, on the ground that general unsecured creditor's "actual" losses should be paid before non-pecuniary penalty claims, which do not represent an "actual" loss to the tax authority. *In re Virtual Network Servs. Corp.*, 902 F.2d 1246 (7th Cir.1990) (penalty

on prepetition tax claim subordinated in Chapter 11 liquidating plan); *Schultz Broadway Inn v. United States*, 912 F.2d 230 (8th Cir.1990) (penalty on prepetition tax claim subordinated in Chapter 11 liquidating plan); *United States v. Reorganized CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.)*, 53 F.3d 1155 (10th Cir. 1995), *cert. granted*, No. 95–325, —— U.S. ——, 116 S.Ct. 558, 133 L.Ed.2d 458 (1995) (penalty on prepetition tax claim subordinated in Chapter 11 plan); *United States v. Noland (In re First Truck Lines, Inc.)*, 48 F.3d 210 (6th Cir.1995), *cert. granted*, No. 95–323, —— U.S. ——, 116 S.Ct. 558, 133 L.Ed.2d 458 (1995) (penalty on post-petition taxes subordinated in converted Chapter 7 case); *Burden v. United States*, 917 F.2d 115 (3d Cir.1990) (penalties imposed on prepetition tax claim subordinated in Chapter 13 case).

Iowa argued to the contrary and attempted to characterize some circuit courts as having found to the contrary, but in fact, while a few of the cases treat post-petition penalty payments as administrative expense priority claims, none of the cases cited by Iowa even mention the issue of equitable subordination under Section 510(c)(1) and are, therefore, not relevant. *See United States v. Friendship College, Inc. (In re Friendship College, Inc.)*, 737 F.2d 430 (4th Cir.1984); *United States v. Flo–Lizer, Inc. (In re Flo–Lizer, Inc.)*, 916 F.2d 363 (6th Cir.1990); *United States v. Ledlin (In re Mark Anthony Constr. Inc.)*, 886 F.2d 1101 (9th Cir.1989); *United States v. Cranshaw (In re Allied Mechanical Servs., Inc.)*, 885 F.2d 837 (11th Cir.1989).

### (a) *History of Section 510(c)*

When Section 510(c)(1) was proposed in the House and the Senate as part of the Bankruptcy Reform Act of 1978, "equitable subordination" was defined broadly with the intention that courts would develop a definition based on the common law doctrine of equitable subordination in existence at the time:

It is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts development of this principle. To date, under

existing law, a claim is generally subordinated only if [the] holder of such claim is guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, such as a penalty. . . .

124 CONG.REC. H11095 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards, sponsor), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6452; 124 CONG.REC. S17412 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini, co-sponsor), *reprinted in* 1978 U.S.C.C.A.N., 5787, 6521; *Virtual Network Servs.*, 902 F.2d at 1248; *United States v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 942 F.2d 1055, 1061–62 (6th Cir.1991), *cert. denied, Krugliak v. United States*, 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992).

In 1977, shortly before the new Bankruptcy Code took effect, the Fifth Circuit Court of Appeals summarized the common law doctrine of equitable subordination:

(i) The claimant must have engaged in some type of inequitable conduct.

(ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.

(iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir.1977) (citations omitted); *accord In re Kansas City Journal–Post Co.*, 144 F.2d 791, 803–04 (8th Cir.1944), (holding that the presence of inequitable conduct was a prerequisite before a bankruptcy court could subordinate the claim of the creditor); *cf. Taylor v. Standard Gas & Elec. Co.*, 306 U.S. 307, 306 U.S. 618, 59 S.Ct. 543, 83 L.Ed. 669 (1939); *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Comstock v. Group of Institutional Investors*, 335 U.S. 211, 68 S.Ct. 1454, 92 L.Ed. 1911 (1948). Congress recognized that equitable subordination under common law generally required that the subordinated party be "guilty of misconduct." S.REP. No. 95–989, 95th Cong., 2d Sess., *167 (WL) (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787.

However, before the 1978 Code took effect, the Second Circuit Court of Appeals decided

*Jezarian v. Raichle (In re Stirling Homex Corp.)*, which subordinated the claims of defrauded shareholders to those claims of other general unsecured creditors without requiring inequitable conduct by the shareholders. 579 F.2d 206, 213 (2nd Cir.1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979). The significance of *Jezarian* is that the court did not require a showing of "inequitable conduct" before subordinating the claims of the defrauded shareholders. In light of this decision, the circuit courts have dropped the "inequitable conduct" requirement in tax penalty cases under the Bankruptcy Code based on the assumption "that the Congressional sponsors of the Bankruptcy Reform Act possessed awareness of [*Jezarian* ] and its implications prior to the passage of section 510(c)(1)." *Schultz*, 912 F.2d at 233 (citing *Virtual Network Servs.*, 902 F.2d at 1249).

In addition to eliminating the "inequitable conduct" standard, circuit courts have also noted that the legislative history for Section 510(c)(1) explicitly distinguishes penalty claims from the inequitable conduct standard, stating that a "penalty" is, by its very nature, a claim of a "status susceptible to subordination," *Schultz*, 912 F.2d at 232; *See supra* at 509 (citing to the exact legislative history). *But see* S.Rep. No. 95–989, 95th Cong.2d Sess. *167 (WL) (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5860 ("[U]nder the judicial doctrine of equitable subordination, a tax claim would rarely be subordinated.") The first circuit court case to hold that penalty claims could be subordinated in a liquidating Chapter 11 case, *Virtual Network Servs.*, noted that the explicit exception for penalty claims in the legislative history from the inequitable conduct standard did not contradict the directive from Congress to follow common law:

> [E]quitable subordination of tax penalty claims did not occur prior to passage of the [Bankruptcy Code] because under the then-exiting law, the Bankruptcy Act of 1898, 11 U.S.C. § 93(j), noncompensatory penalty claims owed to the Government were specifically disallowed.

902 F.2d at 1248. Thus, penalty claims did not need to be subject to equitable subordi-

nation until the Bankruptcy Code made such penalties allowable as administrative expenses.

### (b) *Discussion of Schultz*

The Eighth Circuit Court of Appeals' opinion in *Schultz*, which is controlling law, held that a prepetition tax negligence penalty may be subordinated to general unsecured claims in a Chapter 11 liquidating plan. 912 F.2d 230 (8th Cir.1990). In support of its conclusion, the *Schultz* court stated:

> [U]nder the facts of this case the general unsecured creditors who suffered actual losses should receive preference over the Government's claim for a non-pecuniary loss tax penalty in this liquidating chapter 11.

*Id.* at 234.

In *Schultz*, the tax authority argued that equitable subordination only applies to Chapter 7 cases, because 11 U.S.C. § 726(a), which provides for priority of distributions in Chapter 7 cases, specifically mentions Section 510 and because the distribution of penalty tax claims falls under subsection (a)(4) of Section 726 and is, thus, explicitly subject to equitable subordination. *See* 11 U.S.C. § 726(a)(4) ("Except as provided in section 510, property of the estate shall be distributed—(4) fourth, in payment of any allowed claim ... for any ... penalty ... to the extent that such ... penalty ... [is] not compensation for actual pecuniary loss suffered by the holder of such claim.").

The *Schultz* court rejected the government's argument that equitable subordination of penalty claims is restricted to Chapter 7 cases and held that pecuniary claim holders should be paid ahead of non-pecuniary penalty claims in liquidating Chapter 11 cases as well:

> We first consider that the equitable subordination provisions of section 510(c)(1) apply to all chapters of the Bankruptcy Code. 11 U.S.C. § 103(a) (1988). We further observe that chapter 7, which applies purely to liquidations, is more conducive to a uniform rule subordinating penalty claims than is chapter 11, which can be used both by reorganizing businesses and by liquidat-

ing businesses.... Therefore, in the chapter 7 context, a uniform rule subordinating penalty claims recognizes that ordinary creditors should receive protection from debtors' punitive obligations.

The same rule, however, would be inappropriate for proceedings under chapter 11. In chapter 11 proceedings, Congress expected that many debtors would continue their operations under a reorganization plan and ultimately return to a viable and profitable economic state. In such cases, the debtor, quite rightly, should bear the burden of its full punitive obligations. Where a chapter 11 debtor opted to liquidate, however, the consequences to creditors could be very similar to a proceeding under chapter 7. Accordingly, we are not persuaded by the Government's argument that the silence of chapter 11 as to penalty claims exempts such claims from subordination under section 510(c)(1). We deem it just as likely that Congress deliberately chose to leave to the bankruptcy court, to determine on a case-by-case basis, the question of whether a penalty claim should be subordinated in a proceeding under chapter 11.

*Id.* at 233–34 (citation omitted). Thus, *Schultz* concluded that a liquidating Chapter 11 case should be treated for distribution purposes as if it were a Chapter 7 case, and a bankruptcy court may subordinate tax penalty claims if the equities of the case support subordination.

### (c) *Post–Petition Penalty Claims*

The only distinction between the penalty tax claim in *Schultz* and the present case is that the penalty tax claim in *Schultz* was a prepetition claim, but the penalty portions of the tax authorities' claims are post-petition claims in this case. The tax authorities take the position that post-petition penalty claims, which are administrative expense claims under 11 U.S.C. § 503, may not be subordinated to general unsecured creditors because 11 U.S.C. § 507(a)(1) states that Section 503(b) administrative claims are paid first. In addition, 11 U.S.C. § 1129(a)(9)(A) states that Section 507(a)(1) claims are to be paid in full on the effective date of the Chapter 11 plan. Finally, unlike Section 726, Section 1129(a) is

not subject to Section 510(c). Thus, according to the tax authorities, the special categorization of post-petition tax penalties as Section 503(b) administrative expense claims prohibits them from being subordinated behind general unsecured claim holders.

In a Chapter 7 case, the Sixth Circuit Court of Appeals held that post-petition administrative claims for tax penalties could be equitably subordinated. *First Truck Lines,* 48 F.3d at 218 ("In drafting Section 726(a)(1) and making it subject to Section 510(c), Congress made postpetition, nonpecuniary loss tax penalties, ..., subject to the bankruptcy courts' equitable subordination power."). The Sixth Circuit did not comment on the post-petition status outside of the context of Section 726(a)(1), but the bankruptcy court below held that the post-petition nature of the penalty is but one equity it would consider when deciding whether to subordinate the claim. *In re First Truck Lines, Inc.,* 141 B.R. 621, 628 (Bankr.S.D.Ohio 1992). The bankruptcy court subordinated the post-petition penalty claim because the court found that the reason for granting the penalty claim priority status is to prevent future noncompliance and the court found that this purpose was not relevant in a liquidating bankruptcy case. *Id.*

At least one bankruptcy court in the Eighth Circuit has concluded that bankruptcy courts may equitably subordinate post-petition penalty claims of a tax authority in a liquidating Chapter 11 case. In *Unger v. United States (In re CMC Elecs. Corp.),* the bankruptcy court held:

> In a case such as this, where the debtor's unsecured creditors will not receive the full value of their claims, Congress' preference for compensating creditors' actual losses first and the policy that innocent parties should not have to bear the burden of penalties lead this Court to conclude that it should subordinate the Government's claim based upon tax penalties to the claims of the claims of CMC's general, unsecured creditors.

166 B.R. 382, 386 (Bankr.E.D.Mo.1993); *See also Walker v. Ferguson (In re Import & Mini Car Parts, Ltd.),* 136 B.R. 178 (Bankr.

N.D.Ind.1991) (holding in Chapter 7 case that post-petition tax penalty situation confronted by court was not sufficiently distinguishable from the prepetition tax penalty situation confronted in the liquidating Chapter 11 cases, *Schultz* and *Virtual Network*, to mandate reaching a different result, and thus, concluding that equities found in favor of subordinating post-petition penalty claim behind general unsecured creditors).

Based on the foregoing authority, the tax authorities post-petition claims for penalties on debtor's post-petition conduct may be subordinated if the equities of this case permit. Since the policy of subordinating penalty claims in liquidating cases is to compensate pecuniary claim holders before non-pecuniary claim holders, there is no difference between prepetition and post-petition penalty claims because both claims are non-pecuniary in nature, and *Schultz* emphasizes that the pecuniary/non-pecuniary nature of the claim controls whether the penalty is eligible to be subordinated. The administrative status of post-petition penalty claims derives from the desire to compel future performance, and this purpose is of no benefit in a liquidating case where the debtor has ceased operations.

### 3. *Findings of Fact/Consideration of Equities*

The trustee has in his favor the policy of *Schultz*, which favors paying pecuniary claims ahead of non-pecuniary claims in liquidating cases. Non-receipt of the penalty payment will not harm the tax authorities because the penalty claims do not represent lost consideration. Thus, the tax authorities will not suffer a tangible loss for money "lent" to the debtor because penalties are assessed to compel future performance, not to compensate for an actual debt. The trustee has represented that the underlying tax claim, the pecuniary debt owed to the tax authorities, will be paid in full. Unlike the tax authorities, whose pecuniary claims will be paid in full, general unsecured creditors, who provided actual consideration for their claims, will not be compensated in full when the assets of the estate are distributed.

Several arguments advanced by the tax authorities have considerable merit. First, the penalty claim is a post-petition administrative expense claim in a liquidating Chapter 11 case, and reordering an administrative expense claim after a general unsecured creditor upsets the order of priority under the Bankruptcy Code. Second, the tax authorities raise the point that the penalties were imposed because the trustee failed to file tax returns for the taxes or provide records to the tax authorities, and therefore, the estate should not be entitled to benefit for failing to timely file tax returns.

A final equity in favor of the tax authorities is that the total dollar amount of penalty claims at issue, $1,452.25, is so insignificant that, if they are subordinated, there will not be a significant benefit to the unsecured creditors.

As a separate "statutory" argument, Nebraska has made a distinction between the term "expense" as used in Section 503(b) and the term "claim" as used in Section 510(c)(1). Nebraska argues that the terms are mutually exclusive because certain sections of the Bankruptcy Code distinguish between the terms "claim" and "expense." *See* 11 U.S.C. §§ 502, 503, 507(a). Thus, according to the argument, under Section 510(c)(1), "claims" may be subordinated, but not "expenses." However, although the Bankruptcy Code sometimes distinguishes between these terms, the Code also uses them interchangeably. For example, 11 U.S.C. § 1129(a)(9)(A) uses the term "claim" to refer to "claims of a kind specified in section 507(a)(1)," and Section 507(a)(1) is the subsection of 507 which explicitly uses "expense" instead of "claim." 11 U.S.C. § 101(5) defines claims as a "right to payment." Administrative expenses are a right to payment. Therefore, to the extent a distinction between the terms "claims" and "expenses" has been made under the Bankruptcy Code, it appears that the Code uses such distinctive language merely to clarify that administrative expenses are a different type of claim from a prepetition claim.

There is no question that subordinating an administrative claim to general unsecured claims disturbs the order for pay-

ment set forth under the Bankruptcy Code. However, Section 510(c)(1) gives bankruptcy courts the authority to so reorder priorities. Section 510(c) would have no effect unless it is interpreted to so apply. Even in *Schultz*, the Eighth Circuit approved reordering the statutory payout scheme established in Chapter 11 by subordinating a general unsecured tax claim to other general unsecured claims, on no other statutory basis than Section 510(c)(1). Even though *Schultz* does not speak to this specific issue, it appears that the equitable powers granted by Section 510(c)(1) enable a bankruptcy court in limited circumstance to reorder the statutory order for payout.

In this case, subordination is appropriate. In a case in which the trustee's failure to file a tax return caused the penalty to be imposed, *Schultz* is authority for the position that this court should not hold the innocent general unsecured creditors accountable for the trustee's lack of diligence.

The post-petition penalty claims of the tax authorities, which are slightly less than $1,500.00, shall be subordinated to allowed general unsecured claims.

### C. *Priority of Post–Petition Interest*

 The trustee is arguing that interest accrued on post-petition tax liabilities is not entitled to priority as an administrative expense claim under the Bankruptcy Code. In support of this position, the trustee notes that Section 503(b)(1)(B) is silent about interest. *See* 11 U.S.C. § 503(b)(1)(B).

All of the circuit courts that have decided the interest issue have held that interest on post-petition tax claims should be included under Section 503(b)(1)(B) as an administrative expense priority claim. *Flo–Lizer*, 916 F.2d at 366–67; *United States v. Ledlin (In re Mark Anthony Constr., Inc.)*, 886 F.2d 1101, 1106–08 (9th Cir.1989); *United States v. Cranshaw (In re Allied Mechanical Servs., Inc.)*, 885 F.2d 837, 839 (11th Cir.1989); *United States v. Friendship College, Inc. (In re Friendship College, Inc.)*, 737 F.2d 430, 433 (4th Cir.1984). These cases rely upon the continuing validity of the Supreme Court's decision in *Nicholas v. United States*, which held that interest on post-petition tax liabilities was accorded administrative ex-

pense priority, even though the Bankruptcy Act did not explicitly so provide. 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966); *see also Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Indus., Inc.)*, 19 F.3d 1371, 1378 (11th Cir.1994) (discussing cases which address interest on administrative tax claims). These courts have assumed that if Congress intended by the new code to change the manner in which interest on the post-petition tax obligation was treated, Congress would have explicitly described the change in treatment. *Friendship College*, 737 F.2d at 432–33; *accord Allied Mechanical*, 885 F.2d at 839; *Colortex Indus.*, 19 F.3d at 1378.

The United States District Court for Nebraska in *United States v. Annett Ford, Inc. (In re Annett Ford, Inc.)*, concluded that interest earned on post-petition pay-roll taxes is an administrative expense under Section 503(b)(1)(B) and (C). 64 B.R. 946 (D.Neb. 1986) (affirming conclusion of bankruptcy court that interest and penalties are post-petition administrative expenses, but reversing conclusion of bankruptcy court that interest and penalties could not be paid out of proceeds of collateral of secured creditor. *See In re Annett Ford, Inc.*, 62 B.R. 65, 68 (Bankr.D.Neb.1985)). On the subject of whether interest could be separated from the underlying administrative tax liability when paying administrative claims out of the proceeds of a secured creditor's collateral, the district court stated:

> Like the taxes themselves, the penalties and interest claimed by the United States are part and parcel with the continued operation of the debtor's business.... The taxes, penalties and interest come as a package.

*Annett Ford*, 64 B.R. at 947. The Eighth Circuit Court of Appeals cited this passage with approval in *United States v. Boatmen's First Nat'l. Bank*, a case in which the circuit court held that the administrative expense claim of the Internal Revenue Service, which included interest on a post-petition tax liability, could be paid from the secured creditor's collateral. 5 F.3d 1157, 1160 (1993). *See also In re Parmenter*, 124 B.R. 565 (Bankr. D.Neb.1990) (holding that interest on post-

petition property taxes, which were unsecured administrative priority taxes, were also administrative expense claims); *In re Cooper,* 124 B.R. 797 (Bankr.D.Neb.1990).

█ Penalties may be subordinated through the application of Section 510(c)(1), but a similar provision does not exist for interest. Therefore, interest on post-petition tax penalties is allowed as an administrative expense claim under Section 503(b)(1). *See also In re Mall Food Servs. Corp.,* 75 B.R. 639 (Bankr.E.D.Mo.1987) (following *Friendship College* ).

The tax authorities' claims for accrued interest on post-petition administrative expense tax liabilities are allowed as part of the administrative expense claims under Section 503(b)(1).

Separate journal entry to be filed.