**In re MR. MOVIES, INC., Andrews–Johnson, Inc., Tiger Lilly Corporation, Debtors.**

Nos. 02–40310, 02–40311, 02–40312.

United States Bankruptcy Court, D. Minnesota.

Dec. 23, 2002.

Michael L. Meyer, Ravich, Meyer, Kirkman, McGrath, Minneapolis, MN, for debtors.

*ORDER ALLOWING CLAIM NO. 28*
*OF RENTRAK CORPORATION*

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on October 16, 2002, on objections by Mr. Movies, Inc. ("Debtor") and the Official Committee of Unsecured Creditors ("the Committee") to Claim Number 28 filed by Rentrak Corporation ("Rentrak"), and on a motion for sanctions against Debtor's counsel filed by Rentrak. Appearances were noted on the record. The court, having considered the evidence, the arguments of counsel, and all of the files, pleadings, and records herein, makes the following:

### FINDINGS OF FACT

Throughout much of 2001, Debtor and Rentrak were engaged in litigation in state court in Oregon concerning amounts allegedly owing to Rentrak for Debtor's failure to pay a promissory note and accrued interest, failure to pay amounts owing under Rentrak's National Account Agreement, failure to pay revenue sharing fees, damages for unreturned video tapes, and for Rentrak's lost revenue resulting from breach of contract. At the same time, Seacoast Capital ("Seacoast"), Debtor's largest secured creditor, was actively attempting to structure a workout arrangement amongst all of Debtor's creditors. Part of its efforts included negotiations with Rentrak in anticipation of Debtor filing a chapter 11 bankruptcy case. Seacoast offered to set aside funds from a foreclosure or chapter 11 asset sale if Rentrak would accept a cash payment of $145,000.00, if paid by June 30, 2002, in full

settlement of all amounts owed by the Debtor.

■ In light of Seacoast's offer, and rather than proceeding to litigation, Rentrak and Debtor stipulated to the entry of a judgment against Debtor and, contemporaneously with the judgment, a Settlement Agreement And Covenant Not To Execute ("Agreement"). The stipulated judgment was approved by the state court judge on January 22, 2002, then Mr. Movies filed Chapter 11 on January 24, 2002, and judgment was entered on January 29, 2002.[1] In Schedule F of its bankruptcy petition, Debtor listed Rentrak's claim in the amount of $690,000 and did not indicate it was contingent, unliquidated, or disputed.

The stipulated judgment was in the amount of $690,239.59 plus interest accruing from October 1, 2001, costs, disbursements, and attorneys' fees. This amount corresponded precisely to the amounts that Rentrak had sought for breach of contract damages and damages attributable to failure to pay principal and interest due on the promissory note. It did not include liquidated damages that Rentrak could have sought under Section 3.2 of an Addendum to the National Account Agreement dated August 17, 1998. The stipulated judgment, however, only specified the principal amount of the judgment, prejudgment interest, the formula for calculation of post-judgment interest, costs, and attorney's fees. It did not make any factual findings as to the actual amounts owing under each count of Rentrak's complaint.

In the Agreement, Debtor acknowledged and agreed that it was "obligated to Rentrak for claims as set forth in Rentrak's

---

1. The ministerial act of the entry of a judgment by the court clerk did not constitute the continuation of a judicial proceeding under 11 U.S.C. 362(a)(1) and, therefore, was not a violation of the automatic stay. *See, e.g.,* *Heikkila v. Carver (In re Carver)*, 828 F.2d 463, 464 (8th Cir.1987); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527–28 (2nd Cir. 1994); *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 973–75 (1st Cir.1997).

First Amended Complaint in the sum of $690,239.50," plus interest, costs and fees. The Agreement provides that it is "governed by and construed and enforced in accordance with the laws of the state of Oregon ..." and further provides that Rentrak would not take any steps to execute on the stipulated judgment before June 30, 2002. If Debtor or Seacoast paid Rentrak $145,000.00 by June 30,2002, and the payment was not recovered as a preference or otherwise avoided, Rentrak would satisfy the judgment against Debtor. If Debtor or Seacoast failed to pay $145,000.00 prior to the deadline, Rentrak was free to execute on its judgment.

Prior to the June 5, 2002, claim filing deadline, Rentrak filed a timely proof of claim in the amount of $756,187.19, representing the amount of the stipulated judgment, interest and costs. On September 13, 2002, Debtor objected to Rentrak's claim. Debtor acknowledged an indebtedness to Rentrak of only $350,000, and asserted that it was prevented from paying Rentrak the $145,000 before June 30, 2002 by the terms of the Plan of Reorganization which had been confirmed by order dated August 14, 2002. The Committee joined in Debtor's objection, asserting that the claims should be allowed only for $145,000, $350,000, or whatever sum the court held was actually due regardless of the amount of the stipulated judgment. It also asserted separately that whatever the amount allowed, Rentrak's claim should be subordinated to the other general unsecured creditors, pursuant to 11 U.S.C. § 510(c), to the extent Rentrak's claim exceeds $145,000. Debtor later joined in this request for subordination.

## CONCLUSIONS OF LAW

### A. BURDEN OF PROOF

■ A proof of claim is deemed allowed unless a party in interest objects and constitutes "prima facie evidence of the validity and amount of the claim" pursuant to Federal Rule of Bankruptcy Procedure 3001(f). 11 U.S.C. § 502(a); FED. R. BANKR. P. 3001(f); *see also* FED. R. BANKR. P. 3007. The burden of proof is a "substantive" aspect of a claim and "one who asserts a claim is entitled to the burden of proof that normally comes with it." *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 21, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). Once Debtor and the Committee objected, if Rentrak's proof of claim provides "some evidence as to its validity and amount" and the evidence is "strong enough to carry over a mere formal objection without more[,]" then Rentrak meets its initial burden of proof. *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (*citing* 3 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 502.02, at 502–22 (15th rev.ed.1991)).

■ Since the proof Rentrak provides of its claim is evidence of a valid state court judgment against Debtor, the claim is allowed unless the Committee or the Debtor present sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623. Neither the Committee nor Debtor, however, produced *any* evidence to dispute the validity of Rentrak's judgment. If they had, the burden would revert back to Rentrak to prove the validity of its claim by a preponderance of the evidence since the ultimate burden of persuasion remains at all times upon the claimant. *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir.2000).

### B. THE ISSUES

As this matter developed, it became clear that the parties have raised the following issues:

1) Are the Debtor and the Committee barred by any preclusion doctrine from relitigating the amount due on the claim?

2) Is the contract to pay the judgment in full unless the $145,000 payment was made before June 30, 2002, void due to the doctrine of impossibility?

3) Is the Debtor excused from its agreement to pay the agreed-upon amount as memorialized in the judgment because Rentrak materially breached the contract when it filed its proof of claim for the contracted-for amount on March 8, 2002, well in advance of the June 30, 2002 payment deadline?

4) Should the allowed claim be subordinated under § 510(c) of the Bankruptcy Code?

## C. SUMMARY JUDGMENT

All parties in interest have assumed that these issues are ripe for determination without evidentiary hearing. In essence, they have all treated the objection and responses as cross-motions for summary judgment and have asserted that there are no material facts to be decided which would foreclose the entry of summary judgment. This is appropriate under the Federal Rules of Bankruptcy Procedure. *See* FED. R. BANKR. P. 3007 ("If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding."); FED. R. BANKR. P. 7001 ("The following are adversary proceedings: ... (8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination"); and FED. R. BANKR. P. 9014(C) (making Rule 7056 applicable to contested proceedings).

Summary judgment is governed by Federal Rule of Civil Procedure 56, which is made applicable to this motion by Bankruptcy Rule 9014. Rule 56 provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c). The moving party on summary judgment bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party with the burden must present evidence that establishes all elements of its claim or defense. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548; *United Mortg. Corp. v. Mathern (In re Mathern)*, 137 B.R. 311, 314 (Bankr.D.Minn.1992), *aff'd*, 141 B.R. 667 (D.Minn.1992). When the moving party has met its burden of production under Rule 56(c), the burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). This responsive evidence must be probative, and must "do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. If the nonmoving party fails to come forward with specific facts showing that there is a genuine issue for trial, summary judgment is appropriate. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## D. JURISDICTION AND PRECLUSION

Three theories preclude the Committee and Debtor from challenging

the amount of Rentrak's claim, but do not preclude this court from addressing the other issues raised by their objections: the *Rooker–Feldman* doctrine, issue preclusion, formerly known as collateral estoppel, and claim preclusion, formerly know as res judicata. A court considering its jurisdiction must consider *Rooker–Feldman* first, then any other preclusion doctrines raised by the parties. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554–55 (7th Cir.1999). The *Rooker–Feldman* doctrine expresses the principle that lower federal courts, including bankruptcy courts, lack subject matter jurisdiction to hear challenges to determinations made by state courts in judicial proceedings. Federal review of state court decisions lies only with the United States Supreme Court. *See, e.g., Snider v. City of Excelsior Springs*, 154 F.3d 809, 811 (8th Cir. 1998). The existence of subject matter jurisdiction in federal court is a question of law, which courts may raise, and often do, *sua sponte. Lemonds v. St. Louis County*, 222 F.3d 488, 492 (8th Cir.2000), *cert. denied*, 531 U.S. 1183, 121 S.Ct. 1168, 148 L.Ed.2d 1026 (2001). The doctrine originates with the cases of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

■ Moreover, a lower federal court may not entertain a claim that is "inextricably intertwined" with a claim addressed in the state court. In order to determine whether a claim is "inextricably intertwined" with a state court claim, the federal court analyzes whether the relief requested in the federal action would effectively reverse the state court decision or void its ruling. *Goetzman v. Agribank, F.C.B. (In re Goetzman)*, 91 F.3d 1173, 1177 (8th Cir.1996). A "federal claim is inextricably intertwined with

the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)(Marshall, J., concurring).

[S]ince *Rooker–Feldman* deprives federal courts of jurisdiction over general claims not raised before the state court only where such claims are inextricably intertwined with the state court judgment, a claim—particularly a claim under federal law—is not precluded if it is 'separable from and collateral to the merits of the state-court judgment.'

*Lemonds*, 222 F.3d at 493 (*quoting Pennzoil*, 481 U.S. at 21, 107 S.Ct. 1519 (Brennan, J., concurring)).

■ Therefore, under *Rooker–Feldman*, I do not have jurisdiction to set aside or otherwise alter the amount of Rentrak's judgment against Debtor. That does not mean, however, that I am without jurisdiction to hear issues related to the validity of the Agreement, if Rentrak breached the Agreement, or if a portion of Rentrak's claim should be subordinated. These issues are separable from and collateral to the merits of the state court judgment and I have jurisdiction to consider those issues.

In addition, Rentrak argues that issue preclusion (collateral estoppel) bars the Committee and Debtor from challenging the judgment and the issues raised in their objections. Although not raised by Rentrak, claim preclusion (res judicata) may also prevent Debtor and the Committee from challenging aspects of the stipulated judgment.

■ Claim preclusion applies to the same parties, and those in privity to them, to prevent one party from pursuing a claim against another party "where the claim in the second action is one which is based on

the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action." *Rennie v. Freeway Transport,* 294 Or. 319, 656 P.2d 919, 921 (1982). Under issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

 The Agreement provides and the law requires that I must first consider the law of the state of Oregon to determine the preclusive effect of the stipulated judgment. *See Marrese v. American Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 375, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)(a federal court must first consider the law of the state in which a judgment was rendered when determining the preclusive effect to be accorded a judgment). Deference to prior adjudications includes those of the state courts, and "the scope of the preclusive effect is governed by the law of the state from which the prior judgment emerged." *Simmons v. O'Brien,* 77 F.3d 1093, 1096 (8th Cir.1996). In Oregon, issue preclusion precludes future litigation on an issue of either fact or law issue only if the issue was "actually litigated and determined" in a setting where its "determination was essential to" the final decision reached. *North Clackamas School Dist. v. White,* 305 Or. 48, 750 P.2d 485, 486 (1988), *modified on reconsideration, other grounds,* 305 Or. 468, 752 P.2d 1210 (1988).

 For claim preclusion, "[t]he Oregon rule, and the majority rule, is that a consent judgment is binding and conclusive upon the parties and those in privity with them to the same extent as a judgment rendered upon controverted facts at a contested trial." *Gordon H. Ball, Inc. v. Oregon Erecting Co.,* 273 Or. 179, 539 P.2d 1059, 1063 (1975), *superseded on other grounds by statute as stated in, Roberts v. Gray's Crane & Rigging, Inc.,* 73 Or.App. 29, 697 P.2d 985 (1985). The state court judgment determined the principal amount of the judgment to be $690,239.59, prejudgment interest of $53,269.42 plus a per diem amount of $170.19 from January 1, 2002 until date of entry of the judgment, post-petition interest to compound on a 9 percent per annum simple interest basis from the date of entry of the judgment, and attorney fees of $8,934.00. The Committee and Debtor, whether under issue preclusion, claim preclusion, or *Rooker–Feldman,* may not challenge these facts as established by the judgment.

The validity of the Agreement and the issue of subordination, however, are different matters. The prior stipulated judgment between Rentrak and Debtor regarding the amount of the debt precluded only those issues and claims based on the amount of the that debt, including those that might have been raised, but were not. *See Arnold v. United States,* 784 F.Supp. 773, 776 (D.Or.1992). The Committee and Debtor are not prevented under either issue or claim preclusion from contesting the validity of the Agreement, contesting whether Rentrak breached the Agreement, or raising the issue of subordination. These issues are not addressed in the stipulated judgment, could not have been raised in the state court proceeding, and were not litigated. *See Arnold,* 784 F.Supp. at 776. Certainly, the request to subordinate Rentrak's claim did not exist until the bankruptcy case was filed and could not have been determined in the prepetition state court action. *See, e.g., Sill v. Sweeney (In re Sweeney),* 276 B.R. 186, 196 (6th Cir. BAP 2002); FED. R.

BANKR. P. 7001. I will discuss each of these issues in turn.

## E. THE CONTRACT IS NOT VOID

■ Debtor and the Committee argue that the contract to pay the judgment in its full amount is void because, subsequent to the entry of the judgment, events arose which made performance impossible or impractical. They rely on the black letter principle that a party to a contract is excused from performance and the contract is rendered void if events beyond the control of the party from whom performance is required is made impossible. *See* RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981); *Village of Minneota v. Fairbanks, Morse & Co.,* 226 Minn. 1, 31 N.W.2d 920, 925 (1948); *Dorsey v. Oregon Motor Stages,* 183 Or. 494, 194 P.2d 967, 969 (1948). For any number of reasons, this defense to payment of the judgment is not available.

■ First, the doctrine of impossibility applies only in cases where an impossibility, whatever it may be, was not self created. *See* RESTATEMENT (SECOND) OF CONTRACTS § 261. Debtor argues that once the case was filed it could not make any payment to a prepetition creditor on a prepetition claim outside a plan. That is correct, but it is not an excuse because the wound was self-inflicted. The Debtor voluntarily filed a bankruptcy petition which created the very disability of which it complains.

■ Second, the doctrine of impossibility normally applies only to impossibilities unforeseeable at the time of the Agreement. The bankruptcy filing and subsequent difficulties in performance were foreseeable by Debtor and not grounds to negate the Agreement. *See Portland Section of Council of Jewish Women v. Sisters of Charity,* 266 Or. 448, 513 P.2d 1183, 1188 (1973).

■ Third, and perhaps most importantly, the Debtor was not the only source of payment. The agreement contemplated payment either from Debtor or from Seacoast, and nothing in the bankruptcy filing prevented Seacoast from paying.[2] Seacoast's failure to perform does not excuse Debtor from its obligations under the Agreement. At the time of the Agreement, Debtor knew it was filing chapter 11 and did not have the resources to pay Rentrak, but that Seacoast might pay funds to Rentrak to satisfy the judgment. Both the laws of Oregon and Minnesota agree, that "[o]ne who makes a promise which cannot be performed without the cooperation of a third person is not excused from performance because of inability to secure the required cooperation." *McGrath v. Electrical Const. Co.,* 230 Or. 295, 364 P.2d 604, 609 (1961); *see also St. Paul Dredging Co. v. Minnesota,* 259 Minn. 398, 107 N.W.2d 717, 723–24 (1961)("It is well settled that a promise which cannot be performed without the consent or cooperation of a third party is not excused because of the promisor's inability to obtain such cooperation.")

## F. RENTRAK DID NOT BREACH

■ The argument that Debtor was excused from its performance by reason of an anticipatory material breach by Rentrak is also without merit, and again for several reasons. First, the claim Rentrak filed was the amount of the judgment, subject to satisfaction under the terms of the Agreement. Had Seacoast (or Debtor pursuant to a plan) paid Rentrak $145,000

2. I authorized distribution of the sale proceeds from Mr. Movies to various creditors, including Seacoast, by order dated June 5, 2002. Seacoast received adequate proceeds from the sale to perform under the Agreement.

prior to June 30, 2002, Rentrak's claim would have been satisfied in full and the claim would have been reduced to zero. Moreover, Rentrak merely agreed not to take steps to execute on the judgment. Upon commencement of Debtor's case, the enforcement of the judgment was stayed by the automatic stay. *See* 11 U.S.C. § 362(a)(2). Nevertheless, Rentrak was permitted to file a proof of claim. *See* 11 U.S.C. § 501(a). Its claim represents Rentrak's right to payment. *See* 11 U.S.C. § 101(5)(A). On the date of filing, Rentrak's right to payment was for the amount of the judgment, subject to satisfaction for $145,000.00. Rentrak's claim, however, stated the correct amount of the judgment and the filing of the claim did not violate its agreement with Debtor. Filing a claim was not an "execution on the judgment" as that term was used in the agreement. No writ of execution was sought or served.

## G. SUBORDINATION

Lastly, the Committee, joined by Debtor, argues that if Rentrak's claim is allowed, it should be subordinated to the extent the claim exceeds $145,000.00, either as a penalty or on equitable grounds.

Section 510(c) of the Bankruptcy Code provides that:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may-

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510(c).

As discussed earlier, since the equitable subordination issue is raised in an objection to Rentrak's claim, "the motion to subordinate will be treated as a motion for summary judgment, as if it had been filed in an adversary proceeding." *In re Best Refrigerated Exp., Inc.,* 192 B.R. 503, 508 (Bankr.D.Neb.1996). The general elements of an equitable subordination claim are set forth in *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.),* 850 F.2d 1275, 1283 (8th Cir.1988), and *Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692, 699–700 (5th Cir.1977). Under the three-pronged test of *Bellanca* and *Mobile Steel,* the Committee or Debtor must plead and prove the following: a) The claimant engaged in some type of inequitable conduct; b) The misconduct caused injury to the creditors or conferred an unfair advantage on the claimant; c) Equitable subordination of the claim is consistent with bankruptcy law. *In re Bellanca Aircraft Corp.,* 850 F.2d at 1281.

■ The Eighth Circuit, however, agrees with the Seventh Circuit's holding in *In re Virtual Network Servs. Corp.,* 902 F.2d 1246, (7th Cir.1990), that equitable subordination no longer requires, in all circumstances, some inequitable conduct on part of creditor, but may be applied to subordinate penalty claims to claims for pecuniary loss. *See Schultz Broadway Inn v. U.S.,* 912 F.2d 230, 232–33 (8th Cir.1990); *Best Refrigerated Exp., Inc.,* 192 B.R. at 510.

■ These issues have not been fully developed at this stage, and should be addressed, if at all, in the context of an adversary proceeding. Some observations, however, may be appropriate. First, nothing in Rentrak's complaint or in the stipulated judgment suggest that the judgment amount consisted of a claim for liquidated damages or a penalty and the Committee

does not argue that the judgment contained such a claim. Indeed, to the extent the argument contained a liquidated damages provision, Rentrak failed to include them in the settlement amount. The crux of the Committee's argument is that any judgment in excess of the amount necessary to satisfy Rentrak's claim under the Agreement constitutes a penalty subject to subordination.

Rentrak contends that all of the damages awarded under the stipulated judgment consisted of actual losses under the contract and that the Agreement does not provide the Committee with independent grounds for subordination. The record before me is insufficient to dispute Rentrak's contention. If the Committee or Debtor are of the view that they can prevail in an adversary proceeding to subordinate a portion of Rentrak's claim without running afoul of Rule 9011, they may commence such a proceeding.

ACCORDINGLY, IT IS HEREBY ORDERED THAT

1. Rentrak claim No. 28 in the amount of $756,187.19 is ALLOWED.

2. The objections to the claim No. 28 are OVERRULED.

3. The request for subordination of the allowed claim is DENIED, without prejudice to file an adversary complaint to seek subordination of a portion of Rentrak's claim No. 28.

4. Rentrak's motion for attorney's fees, costs, and expenses is DENIED.