**In re SECURITY ASSET CAPITAL CORPORATION, Debtor.**

**John A. Hedback, Trustee, Plaintiff,**

**v.**

**David Tenney, Defendant.**

**John A. Hedback, Trustee,**

**v.**

**Daniel J. Hill, a/k/a D.J. Hill & Associates, and D.J. Hill & Associates, Inc., Defendants.**

**Bankruptcy No. 04–32889.
Adversary Nos. 06–3328, 06–3329.**

United States Bankruptcy Court, D. Minnesota.

Nov. 5, 2008.

Patrick B. Hennessy, Best & Flanagan LLP, Minneapolis, MN, for Debtor.

## ORDER FOR JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

The above entitled matter came before the Court for trial on October 20, 2008, on plaintiff trustee John Hedback's multi-count amended complaint against defendants David Tenney, Daniel J. Hill, a/k/a D.J. Hill & Associates, and D.J. Hill & Associates, Inc., arising out of the defendants' pre-bankruptcy actions as directors and officers of the debtor. Timothy Griffin appeared for the plaintiff and Thomas Flynn appeared for the defendants. Based upon the testimony and documents received at the trial and arguments of counsel, the Court being fully advised in the matter, now makes this **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I

### SUMMARY

The plaintiff brought this proceeding against the defendants alleging numerous causes of action in connection with their control of the debtor in the year prior to bankruptcy. Pleaded in the amended complaint are these counts: first cause of action, breach of fiduciary duty; second cause of action, deepening insolvency; third cause of action, acting in concert; fourth cause of action, preferential transfer; fifth cause of action, fraudulent transfer; sixth cause of action, disallowance of claims of defendant Tenney; seventh cause of action, ultra vires recision; and, eighth cause of action, statutory recision.

The second, third, fourth, seventh and eighth causes of action were dismissed by order entered on July 1, 2008. The preferential transfer claim was reinstated by order entered on August 7, 2008.[1] The actions tried were: the first, breach of fiduciary duty; the fourth, preferential transfer; the fifth, fraudulent transfer; and, the sixth, objection to the claim of defendant Tenney. The Court finds that the plaintiff has not met the burden of proof on any of the actions tried, and concludes that the defendants are entitled to judgment on each of them.

## II

### FACTS

Security Asset Capital Corporation, (SACC), was founded in 1993 to operate within the asset liquidation industry. Its historic operations were focused on the management of debt receivable portfolios, which included buying and selling portfolios on a wholesale and retail level. In its 10K filing for the period ending December 31, 2001, however, SACC stated that it did not expect any significant income from its debt portfolio.[2] Thus, SACC would not be depending on debt purchasing and collecting for its income.

In 2002, SACC attempted to reposition itself. On July 26, 2002, SACC entered

1. The plaintiff moved for reconsideration of the dismissal, arguing that he could marshal the facts necessary to support the claim through trial presentation. The motion was granted.

2. A 10K filing is a comprehensive summary report of a publicly traded company's performance that must be submitted annually to the Securities and Exchange Commission. Typically, the 10K contains much more detail than the annual report. It includes information such as company history, organizational structure, equity, holdings, earnings per share, subsidiaries, etc.

into a one-year limited license with James Burchetta, the owner of a business method patent for an on-line financial settlement and collection service. The license gave SACC the non-exclusive right to "create an automated system to be used in conjunction with other systems either developed or under development by the Company solely for the purposes of the settlement and/or collection of consumer debts in the United States." The license entitled SACC to use certain intellectual property to develop an on-line consumer debt resolution system. The license further provided that SACC would be entitled to renew it for an additional ten year period if SACC met certain benchmarks, including having its stock traded on a public exchange, having a market capitalization of $30 million and annual revenues of $1 million.

Meanwhile, in February 2002, due to SACC's earlier issuance of unregistered promissory notes, an investigation was initiated by the SEC enforcement division, the Federal Bureau of Investigation, the United States Attorney for the Eastern District of Pennsylvania, and the Pennsylvania Securities Commission. The investigation targeted the company and included the role played by some of its officers, directors, and controlling shareholders. Later, in that same year, SACC's CEO, David Walton, Jr., President, Darrell Musick, and, David Walton Sr., Secretary (who also served as directors), were served with subpoenas by the SEC in connection with its investigation of SACC.

On March 11, 2003, David Walton, Jr., SACC's CEO and Chairman of the Board of Directors, died unexpectedly. At this point, SACC's sole employee was its President, Darrell Musick, and SACC had approximately $8,000 in cash. But, SACC was to receive funds exceeding $1,000,000 on a key person life insurance policy on David Walton, Jr.

On March 13, 2003, defendant Hill became Chairman of the SACC Board of Directors and Chief Executive Officer, and the Board approved a consulting agreement with D.J. Hill & Associates, Inc. at $5,000 per week. Corporate documents are inconsistent and contradictory regarding when Hill became a member of the SACC board. Some of them, including a purported attachment to a memo that he authored, reflect that he was on the Board since 1998. But, many others, including minutes of directors' meetings, created between June 1999 and July 2002 contain the names of the directors, and Hill's name is not mentioned.[3] At the trial, Hill testified that all references in the corporate records to him being a board member before March 13, 2003, are false and fraudulent creations of David Walton Jr., who used the information in various attempts to lure investors and otherwise lend legitimacy to an insolvent SACC. He testified that he was solicited after Walton Jr.'s death by Walton Sr. to join the company and attempt to turn it around. The plaintiff did not call Walton Sr., or anyone else, to rebut Hill's testimony.

On May 7, 2003, the SEC's enforcement division sent notice to Hill as CEO of SACC, Darrell Musick, President of SACC, and David S. Walton Sr., former Secretary of SACC, stating that the SEC intended to initiate legal action against SACC, Musick and Walton Sr. On May 22, 2003, SACC filed its 10K for the period ending December 31, 2002. On May 28, 2003, SACC's auditor quit because SACC had filed the 10K without its consent and before the audit was completed. On June 18, 2003, SACC filed an 8K withdrawing the December 31, 2002 10K, and disclosing

---

3. Defendants' Exhibits MM through SS.

that its auditor had withdrawn. The last substantial business activity of the Debtor was in June 2003.

On June 19, 2003, SACC received a letter from the patent licensor's attorney terminating the license agreement one-week prior to its expiration based on alleged breaches by SACC. On June 27, 2003, SACC's attorney, James Diracles, sketched alternative workout plans, one informal and the other in a Chapter 11 bankruptcy. Diracles preferred the informal plan, stating that potential payout to creditors would be higher. The essence of the informal plan was to pursue a legal claim against former directors for failure to repay a promissory note in the face amount of $1.2 million, and to resolve the securities enforcement issues with the SEC Enforcement Division, Pennsylvania Commissioner of Securities, and the U.S. Attorney for the Eastern District of Pennsylvania. Under either plan, Defendant Hill was to leave the company "shortly after the insurance proceeds are received." Musick was to execute either of the plans.[4]

On July 23, 2003, the net insurance proceeds in the amount of $1,173,363.01 were wired to the trust account of Best & Flanagan. On July 25, 2003, SACC, by letter from one of its attorneys, proposed a settlement of the SEC matter with a detailed plan that it claimed would provide the best return for the Note Purchasers. The proposal represented that, under the plan, recovery of Note Purchasers would be in a range from $872,000 to $4,000,000. Alternatively, the proposal stated, recovery in a Chapter 7 liquidation would yield creditors such as the Note Purchasers $53,016 of the

$1,207,000 in cash assets or 6/10 of 1¢ on each dollar of debt. The proposal was never accepted by the SEC.

On October 23, 2003, the defendants met with the SEC and gave deposition testimony. They were represented by two attorneys from two different law firms paid for by SACC, Mr. James Diracles of Best & Flanagan and Mr. John Carroll of Carroll and Broteman. Defendant Hill denied serving as an officer or director of SACC prior to March 13, 2003, and denied having any role or responsibility in the issuance of the unregistered promissory notes.

On February 18, 2004, the SEC filed a civil action against SACC, former SACC President Darrell Musick, former SACC Secretary David S. Walton Sr., and former SACC CFO Richard Wensel in United States District Court in the Eastern District of Pennsylvania.[5] The Complaint alleged violations of Securities Act of 1933 and the Securities Exchange Act of 1934, and the regulations promulgated thereunder. The SEC sought injunctive relief, disgorgement of ill-gotten gains, civil penalties, and officer and director bars. On May 12, 2004, SACC filed a Chapter 11 bankruptcy petition.

Between July 23, 2003, and the bankruptcy filing, the defendants caused funds to be transferred from the Best & Flanagan trust account to the operating account of SACC (or directly to their own accounts) for payment to themselves of consulting fees and compensation. Defendant Hill received directly or indirectly $185,900, and defendant Tenney received $114,900.

---

4.  In its July 25, 2003, offer of settlement to SEC, SACC proposed that Musick would leave the company and that defendant Hill would remain a director and defendant Tenney would be added as a director. On August 29, 2003, Tenny became a consultant to SACC and later became president, secretary and a director of the company upon the resignation of Musick on November 6, 2003.

5.  Neither defendant was personally charged by SEC in connection with the SACC investigation.

## III

## CONCLUSIONS

### Breach of Fiduciary Duties.[6]

*Generally.*

■ Officers and directors owe fiduciary duties to their corporations. When corporations are solvent, the beneficiaries of the performance of those duties are the shareholders. Shareholders are also the victims of breach. Creditors of solvent corporations are unaffected by either performance or breach of fiduciary duties by officers and directors, unless breach causes corporate insolvency.

■ When corporations are in the "zone of insolvency," [7] or actually insolvent, creditors become recognized beneficiaries of the performance of fiduciary duties by directors and officers to their corporations. That is because insolvency expands the risk of corporate loss beyond shareholders to corporate creditors. *Production Resources Group, L.L.C. v. NCT Group, Inc.,* 863 A.2d 772, 791 (Del.Ch.2004).

■ While protection by the performance of fiduciary duties is expanded to include creditors of insolvent corporations, the nature and extent of the performance of fiduciary duties by directors and officers of insolvent corporations do not change. The duties are still owed to the corporations, not to any specific group or class of protected beneficiaries.[8] *Production Resources Group, L.L.C. v. NCT Group, Inc.,* at 792. And, the duties are performance driven by corporate loyalty and the exer-

cise of due care. See, e.g., *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,* 506 A.2d 173, 179 (Del.1986); *Emerald Partners v. Berlin,* 726 A.2d 1215, 1221 (Del. 1999); NRS § 78.138. Accordingly, officers and directors of insolvent corporations are not obligated, as a matter of law, to liquidate their corporations for the benefit of unsecured creditors, but, can pursue risky restructuring plans in good faith attempts to regain solvency. *Official Committee of Unsecured Creditors of RSL Com Primecall, Inc. v. Beckoff (In re RSL COM PRIMECALL, Inc.),* 2003 WL 22989669, 8 (Bankr.S.D.N.Y.2003); *In re Ben Franklin Retail Stores, Inc.,* 225 B.R. 646, 655 (Bankr.N.D.Ill.1998).

■ Directors and officers are protected from liability for corporate governance by the "business judgment rule." The protection is not lost in insolvency. *RSL COM PRIMECALL, Inc.,* 2003 WL 22989669 at 8. The rule shields directors and officers from liability for actions and decisions that, even in retrospect, might be seen as clearly erroneous and damaging to their corporations. *See In re Hechinger Inv. Co. of Del.,* 327 B.R. 537, 549 (D.Del. 2005); *Roselink Investors, L.L.C. v. Shenkman,* 386 F.Supp.2d 209, 221 (S.D.N.Y.2004); *Official Committee of Bond Holders of Metricom, Inc. v. Derrickson,* 2004 WL 2151336, *2 (N.D.Cal. 2004); *In re Verestar, Inc.,* 343 B.R. 444 (Bankr.S.D.N.Y.2006); *In re Caremark Int'l. Inc. Derivative Litig.,* 698 A.2d 959, 967 (Del.Ch.1996).

---

**6.** The parties agree that Nevada law applies to this cause of action, and that, in the absence of Nevada law, Delaware law applies.

**7.** The "zone of insolvency" has not been defined.

**8.** Assigning duties of performance for the benefit of specific groups or classes would

often result in performance paralysis, even if limited to unsecured creditors. Interests of priority claims, unsecured bondholders, trade creditors, and general unsecured creditors are often conflicting. And, not all creditors of a particular class or group might agree on what might be best for the class or group.

■ So, breach of fiduciary duty by directors and officers is practically limited to their self-dealing to the detriment of their corporations, even in corporate insolvency. Breach of fiduciary duty through self-dealing is intensely fact driven.

*Specifically.*

■ Plaintiff's theory on this count is that the defendants kept a hopelessly insolvent SACC operating with no business prospects in order to enrich themselves with the life insurance proceeds, and to use corporate assets to defend themselves against potential SEC enforcement action targeted at them personally. In support of the theory, the plaintiff claims that: Hill lied to the SEC in representing that he had not been on the Board of SACC until March 2003; that Hill caused the life insurance proceeds from Walton Jr.'s death to be improperly placed in Diracles' law firm's trust account in order to protect the funds from creditors and to enable the defendants to enrich themselves; and, that the defendants unjustifiably failed to timely liquidate SACC in bankruptcy.

The Court concludes that the evidence as a whole shows that the defendants operated SACC professionally and responsibly, that they properly sought and relied on the advice of counsel, and that they acted with due regard for the interests of all SACC's constituencies. The plaintiff's argument that the defendants engaged in self-dealing is specious.

The defendants were never targeted or charged by the SEC in connection with their association with SACC, the plaintiff produced no evidence that the defendants' compensation was inappropriate, and the plaintiff produced no evidence that the defendants were otherwise motivated by self interest to the detriment of SACC. The defendants testified that the life insurance proceeds were placed in Diracles' trust account to shield the funds from levy by a small number of judgment creditors.

Alternative liquidation plans were sketched in a memo to Hill by one of SACC's attorneys, James C. Diracles, in June 2003. The one favored by Diracles, an informal liquidation, would provide an opportunity for greater return to creditors, according to him. A statement in the memo sketching the alternative proposals suggests another possible motive. He said in the memo that "[a] major difficulty with the latter approach [Chapter 7] is the SEC Enforcement Action." In Chapter 7 the Company would be less able to assist in this defense, which would have an impact on the three individual defendants: Darrell Musick, Dick Wenzel and Dave Walton, Sr. At the trial, Diracles testified that his observation was made in consideration that SACC was legally obligated to indemnify officers and directors from liability under certain circumstances.[9]

The plaintiff argues that the defendants inflated the value of litigation against former directors and certain real estate involved in the litigation in order to convince the SEC that SACC should not be liquidated in Chapter 7, thus enabling the defendants to continue their employment with SACC. But, the litigation, on SACC's books at a value of $400,000, was valued at from $1,000,000 to $5,000,000 by an attorney hired by defendant Hill on recommendation of Diracles.[10] The plaintiff has not

---

9. No SACC funds were used to defend the actual targeted officers and directors of SACC.

10. The opinion, memorialized in a letter from attorney, Peter H. Benzian, was presented to

SEC with the settlement proposal on July 23, 2003.

shown that either of the defendants directed or influenced the opinion, or that they had anything at all to do with it.

The plaintiff argues that the defendants grossly misrepresented the return to creditors in a Chapter 7 liquidation in SACC's July 25 settlement proposal to the SEC. The proposal stated that if SACC filed a Chapter 7 liquidation, SACC's "unsecured creditors such as the Note Purchasers would receive 6/10 of 1¢ on each dollar of debt," $53,016 of the $1,207,000 in cash assets. In arriving at this figure, the proposal recited that these expenses and priority claims would limit the recovery for unsecured Note Purchasers: (1) $90,000 in operating expense during the liquidation; (2) $100,000 for a bankruptcy attorney; (3) $490,083 in priority wage claims; and (4) $589,900 in secured creditors claims. The plaintiff argues that these deductions are inconsistent with the facts. For example, SACC had a single employee in March of 2003, its CEO, Darrell Musick. Priority wage claims at the time were limited to $4,925 per employee for 90 days prior to the petition date.

The record does not disclose who came up with these numbers in the settlement proposal, or what they were based on. Reference to $490,083 in priority wage claims is clearly a misstatement of fact. But, that does not necessarily show nefarious conduct or motive by the defendants to deceive the SEC in hopes of improperly keeping SACC operating. Presumably, the SEC would be expected to do its own due diligence in considering the appropriateness of any offer of settlement, and there exists nothing in the record that suggests that corporate books were withheld from the SEC or doctored by the defendants.

The plaintiff argues that Defendant Hill admitted violating his fiduciary duties by acknowledging in an earlier deposition that his sole motivation in the performance of his responsibilities at SACC was driven by what he considered to be in the best interests of its shareholders. By focusing on the best interests of shareholders, the plaintiff claims, Hill violated his duty owed to unsecured creditors of the insolvent SACC.

The statement by Hill is a curious one for someone of his experience to have made.[11] But, it is not clear what he meant by it. There exists no evidence in the record that he acted to shield shareholders personally from SEC action. By acting to maximize return to the shareholders, if that is what he meant, he did not necessarily violate any fiduciary duties to the corporation unless the actions were at the expense of creditors. Shareholders of insolvent corporations are last in line and there is nothing for them until creditors have been provided for. Hill was not questioned by the plaintiff's attorney at the trial about the earlier statement he made in the deposition.

The driving force behind the plaintiff's breach of fiduciary duty action seems to be the premise that the defendants owed a fiduciary duty exclusively to the insolvent debtor's unsecured creditors; and, that the duty could only have been fulfilled through a Chapter 7 liquidation. That is not the law. The duty remained owing to SACC, the corporation, with unsecured creditors protected as included beneficiaries of the duty due to the insolvency. But, no particular form of liquidation, or indeed any

---

11. Hill represents in a resume "[e]xperience as a CEO/COO/VP & GM/Executive Director, leading High Technology Companies for over 20 years. In addition to traditional P & L responsibility, significant focus has been: high growth companies, startups and turnarounds."

liquidation at all, was required as a matter of law (unless there be no reasonable future business prospect), even if there was no reasonable prospect for a return to shareholders. The plaintiff failed to prove breach of fiduciary duty by either of the defendants.

*Preferential Transfer Claim.*

The plaintiff argues that the payments received by the defendants Hill and Tenney, pursuant to consulting contracts, between May 13, 2003, and May 12, 2004, are recoverable preferential transfers under 11 U.S.C. § 547. But, it is clear that the payments were either appropriate payments for services rendered or they were fraudulent transfers. Characterizing the payments as preferential transfers assumes that they were received for legitimate, though antecedent, debts. The plaintiff presented no evidence at the trial to support that claim.

*Fraudulent Transfer Claim.*

The plaintiff offered no evidence that the compensation received by the defendants was not fair and reasonable for the services they rendered. The 11 U.S.C. § 548 cause of action fails for lack of proof.

*Disallowance of Claims of Tenney.*

Defendant Tenney filed a claim in the estate in the amount of $12,240 for unpaid compensation. A filed claim is prima facie allowable. *In re Mr. Movies, Inc.*, 287 B.R. 178 (Bankr.D.Minn.2002). The plaintiff has the burden of proof that the claim is not allowable. The plaintiff offered no evidence on the issue and the claim should be allowed.

## III

### DISPOSITION

Based on the foregoing, it is hereby **ORDERED:**

Defendants David Tenney, Daniel J. Hill, a/k/a D.J. Hill & Associates, and D.J. Hill & Associates, Inc., have judgment in their favor on all counts pleaded in the plaintiff's amended complaint, and the plaintiff trustee, John A. Hedback receive nothing from this adversary proceeding.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**